UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WILLIAM FARRINGTON,

                Plaintiff,

                                        **REPORT**
                                        **AND RECOMMENDATION**
        -against-                        21-CV-1575 (NGG) (AYS)

JEWISH VOICE INC.,

                Defendant.

-------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Plaintiff William Farrington ("Farrington" or "Plaintiff") commenced this action against Jewish Voice Inc. ("Jewish Voice" or "Defendant") alleging copyright infringement in violation of 17 U.S.C. §§ 106, 501 of the Copyright Act, and removal and/or alteration of copyright management information ("CMI") under 17 U.S.C. § 1202(b). Defendant has defaulted and Plaintiff now seeks a default judgment against Defendant under Rule 55(b)(2) of the Federal Rules of Civil Procedure. For the reasons set forth below, this Court recommends entry of judgment on behalf of Farrington and that a judgment awarding damages in the amount of $6,900 be entered against Defendant.

## BACKGROUND

I.    Facts

      The following facts are adduced from Plaintiff's Complaint, the declaration of James H. Freeman ("Freeman Decl."), and the exhibits attached thereto, and are undisputed and taken as true for purposes of deciding this motion. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted).

      A.   The Parties and the Alleged Infringing Activities

Plaintiff is a New York based professional photographer and the author of the photograph, Compl. ¶¶ 1, 5, which depicts former Congressman Anthony Weiner riding a horse train (the "Photograph"). Compl. ¶ 10; see also Compl., Ex. A, DE [1-1]. Defendant is a for-profit business organized and existing under the laws of New York with a place of business in Brooklyn, New York. Compl. ¶¶ 6-8. Defendant, which operates the website www.jewishvoice.com (the "Website"), allegedly ran the Photograph without authorization on November 9, 2016, in an article on the Website titled "Is there hope that Anthony Weiner will overcome cybersex addiction?" Compl. ¶ 16; see also Ex. C, DE [1-3]. Plaintiff owns all rights in the Photograph and had registered the Photograph with the U.S. Copyright Office under Copyright Registration Number VA 2-025-125, effective December 16, 2016 (the "125 Registration"). Compl. ¶¶ 14-15.

Plaintiff first discovered the infringement on or about June 11, 2018. Compl. ¶ 22.

B.  Licensing of the Photograph

Plaintiff licensed the Photograph to the New York Post. Compl. ¶ 11. On November 4, 2016, the New York Post ran an article that featured the Photograph on its web edition. Compl. ¶ 12. The article included a gutter credit below the Photograph which clearly identified Plaintiff as the author of the Photograph. Compl. ¶ 13; see also Ex. B, DE [1-2].

II.  The Complaint

Plaintiff's Complaint sets forth two causes of action. See Compl. ¶¶ 23-38. The first for copyright infringement pursuant to sections 106 and 501 of the Copyright Act. Plaintiff alleges that Defendant willfully and with reckless disregard of and indifference to Plaintiff's rights, infringed Plaintiffs copyright by reproducing and publicly displaying the Photograph on the Website. Compl. ¶¶ 24-26. Plaintiff claims that Defendant is not, and has never been, licensed or

otherwise authorized to reproduce, publicly display, distribute and/or use the Photograph. Compl. ¶ 24.

Plaintiff's second claim against Defendant is pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, for violation of the integrity of copyright management information. Compl. ¶¶ 21-25. Plaintiff asserts that when the New York Post article was published it contained a gutter credit[1], which is copyright management information under 17 U.S.C. § 1202(b). Plaintiff alleges that Defendant copied the Photograph from the New York Post and pasted it on the Website. Compl. ¶ 32. Plaintiff further contends that Defendant knowingly and intentionally removed the copyright management information identifying Plaintiff as the author of the Photograph. Compl. ¶ 33. This removal was made without the knowledge or consent of the Plaintiff. Compl. ¶ 35.

As to relief sought, Plaintiff seeks a default judgment for $2,500 in statutory damages for willful copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 501. See Freeman Decl. ¶ 13. Plaintiff also seeks a judgment for $5,000 in statutory damages for violation of the DMCA. Id. ¶ 15. Finally, Plaintiff seeks $595.00 in attorneys' fees and $440.00 in costs pursuant to 17 U.S.C. § 505. Id. ¶ 16.

III.   Procedural History

The instant action was commenced on March 25, 2021, and the Clerk of the Court issued a summons directed to Defendant on March 25, 2021. See DE [1], [7]. On March 29, 2021, service was properly made upon Defendant via Nancy Dougherty, clerk in the office of the

---

1. "A 'gutter credit' is a notation directly below a photograph or image that identifies the creator of the work." Mantel v. Smash.com Inc., 2019 WL 5257571, at *1 n.2 (W.D.N.Y. Oct. 17, 2019).

Secretary of State, of the State of New York, authorized to accept service on Defendant's behalf. See DE [8].

Defendant failed to respond to the complaint. Accordingly, Plaintiff requested entry of a certificate of default. See DE [9]. On May 19, 2021, the Clerk of the Court noted Defendant's default. See DE [10]. Thereafter, Plaintiff moved for entry of a judgment of default, see DE [11], and that motion was referred to this Court for Report and Recommendation. See Order Referring Motion dated 9/20/2021.

## DISCUSSION

I.   Legal Standards for Default

Motions for default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process. See Fed. R. Civ. P. 55; Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d Cir. 2011). First, the moving party must obtain a certificate of default from the Clerk of the Court. Fed R. Civ. P. 55(a). Once the certificate is issued, the moving party then applies for entry of a judgment of default. Id. R. 55(b).

In the context of a default, all well-pleaded factual allegations in the complaint relating to liability are deemed true. Joe Hand Promotions, Inc. v. El Norteno Rest. Corp., 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing Greyhound Exhibitgroup, 973 F.2d at 158)), cert. denied, 506 U.S. 1080 (1993). The court must still determine, however, whether the well-pleaded allegations establish liability as a matter of law. See City of New York v. Mickalia Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011).

If liability is established, the court turns to ascertain damages "with reasonable certainty." Credit Lyonnais Sec., Inc. v. Alcanture, 183 F.3d 151, 155 (2d Cir. 1999). A hearing is not necessarily required, as long as the court can ensure that there is a basis for the damages sought

4

by way of the proposed default judgment. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). The Court may satisfy this requirement "upon a review of detailed affidavits and documentary evidence." Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012).

II.  Liability

   A.   Copyright Infringement Claim

To establish a claim of copyright infringement, Plaintiff "must show: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991) and Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc., 150 F.3d 132, 137 (2d Cir. 1998)).

As to the first element, the Copyright Act provides:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c). Here, Plaintiff's photograph was first published on November 4, 2016, in the New York Post, see Compl, ¶ 12, and by Defendant November 9, 2016, see id. ¶ 16, and the effective date of the registration is December 16, 2016, see id. ¶ 15. The photograph was therefore registered approximately five weeks after it was first published. Thus, the 125 Registration was obtained within five years after first publication of the work.

5

As to the second element, Plaintiff has proven unauthorized copying by alleging that Defendant republished the photograph without his permission, see Compl. ¶¶ 16-18, and has attached proof of the unauthorized copying, see Compl., Ex. C.

B.      DMCA Claim

To establish a claim under 17 U.S.C. § 1202(b)(3), a plaintiff must prove:

> (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant distributed works or copies of works; (3) while knowing that CMI has been removed or altered without authority of the copyright owner or the law; and (4) while knowing, or having reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement.

Mango v. BuzzFeed, Inc., 970 F.3d 167, 171 (2d Cir. 2020) (punctuation omitted) (quoting 17 U.S.C. § 1202(b)(3)).

Plaintiff has sufficiently pled a claim under 17 U.S.C. § 1202(b)(3). Plaintiff has proven existence of CMI in connection with the photograph by alleging the photograph was originally published with Plaintiff's name in the gutter credit and by attaching the original article with the gutter credit, see Compl. ¶¶ 12-13; Compl., Ex. B. See 17 U.S.C. § 1202(c)(2) (explaining the term CMI includes "[t]he name of, and other identifying information about, the author of a work"); see also Mango v. BuzzFeed, Inc., 356 F. Supp. 3d 368, 377 (S.D.N.Y. 2019) ("gutter credits constitute CMI under the statute"), aff'd, 970 F.3d 167 (2d Cir. 2020).  Plaintiff has satisfied the second element for a claim under 17 U.S.C. § 1202(b)(3) by alleging that Defendant published the photograph to its website. See Compl. ¶¶ 16-17. In light of the evidence that the gutter credit had been displayed in the New York Post article, see Compl., Ex. B, and was removed, see Compl. ¶ 19, it can be reasonably inferred that Defendant knew that CMI had been removed or altered without Plaintiff's authority, as required for the third element. Finally, in light of Defendant's default, Plaintiff's allegation that Defendant "knew, or should have known"

6

that removing the gutter credit would "induce, enable, facilitate, or conceal its infringement of Plaintiff's copyrights in the Photograph," Compl. ¶ 37, is deemed admitted, thus satisfying the final element. See Olusola v. Don Coqui Holding Co., LLC, 2020 WL 8771246, at *3 (E.D.N.Y. Oct. 8, 2020) (allegation admitted by default that CMI was removed "knowingly and with the intent to induce, enable facilitate, or conceal their infringement" sufficient to establish liability) ("Olusola I"), adopted in relevant part by, 2021 WL 631031 (E.D.N.Y. Feb. 18, 2021) (Olusola II).

III.   Damages

    A.   Statutory Damages Under the Copyright Act

"[A]n infringer of copyright is liable for either" actual damages or statutory damages. 17 U.S.C. § 504(a)(1)-(2). Here, Plaintiff has elected to receive only statutory damages. Plaintiff seeks $2,500 in statutory damages. Freeman Decl. ¶ 13.

Section 504 of the Copyright Act allows a court to award "statutory damages for all infringements involved in the action ... in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). If the court finds that infringement was willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." Id. § 504(c)(2). In determining an award of statutory damages, courts in this Circuit consider:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010) (citing N.A.S. Impor. Corp. v. Chenson Enter., Inc., 968 F.2d 250, 252-53 (2d Cir. 1992)).

With respect to the first factor, Defendant's state of mind, the Court finds significant evidence of willfulness. "[C]ourts in this circuit have consistently found that trademark and copyright infringement may be deemed willful by virtue of a defendant's default, without a further showing by the plaintiff." Innovation Ventures, LLC v. Ultimate One Distrib. Corp., No. 12 Civ. 5354 (KAM) (RLM), 2017 WL 10088143, at *5 (E.D.N.Y. Mar. 21, 2017); see, e.g., Idir v. La Calle TV, LLC, No. 19 Civ. 6251 (JGK), 2020 WL 4016425, at *2 (S.D.N.Y. July 15, 2020) (inferring willfulness from a defendant's default). Accordingly, in light of Defendant's default alone, the Court concludes that Defendant's infringement was willful.

Defendant's default also supports a finding as to the fifth factor—that Defendant did not "cooperat[e] in providing evidence concerning the value of the infringing material." Bryant, 603 F.3d at 144; see also Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co., 291 F. Supp. 3d 554, 559-60 (S.D.N.Y. 2018).

Nonetheless, several of the remaining factors weigh against a substantial damages award. While Plaintiff is not required to prove actual damages, he has submitted no evidence of how he lost any revenue or how Defendants profited from the infringement. See McGlynn v. Cools, Inc., No. 19 Civ. 03520 (GBD) (DF), 2020 WL 6561658, at *7 (S.D.N.Y. July 1, 2020) ("Plaintiff has provided virtually no information to enable the Court to analyze these factors and assess an appropriate damages award, particularly with respect to any expenses saved by Defendant or revenue lost by Plaintiff."), report and recommendation adopted, 2020 WL 5525745 (S.D.N.Y. Sept. 15, 2020). Moreover, there is nothing in the record supporting a finding that any profits would have been anything "more than *de minimis.*" Mordant v. Citinsider LLC, No. 18 Civ. 9054 (RA), 2019 WL 3288391, at *1 (S.D.N.Y. July 22, 2019).

8

The record is devoid of any evidence that Defendant had any actual awareness of the infringement before the suit was filed. See Dermansky v. Tel. Media, LLC, No. 19 Civ. 1149, 2020 WL 1233943, at *5 (E.D.N.Y. Mar. 13, 2020) ("[I]n other cases where plaintiffs have received maximum or substantial statutory damages for violation of the Copyright Act, there is additional evidence of willfulness and allegations of actual awareness on the part of the defendants of their infringing activity; there is usually at least one cease-and-desist letter sent to the defendant, and, frequently, requests for injunctive relief."); Idir, 2020 WL 4016425, at *3. This also militates against a substantial award.

While the Court must consider the deterrent effect of any damages award, the Court finds that the $2,500 award sought by Plaintiff is not warranted. The Court considers an award of $1,000 for a single copyright infringement like this one appropriate to sufficiently promote the goals of deterrence that the Copyright Act is designed to protect, particularly when combined with the $5,000 award for the DMCA violation, as discussed below. An award of $1,000 for the Copyright Act violation is in line with similar claims of a single instance of copyright infringement. See, e.g., Dermansky, 2020 WL 1233943, at *6 (awarding $1,000 for a single case of infringement); Mordant, 2019 WL 3288391, at *1 (same). However, in light of the Defendant's removal of Plaintiff's "gutter credit" when republishing the photograph, the Court recommends an award of $1,500 in this instance.

    B.    Damages Under the DMCA

"[A] person committing a violation of" 17 U.S.C. § 1202 "is liable for either (A) the actual damages and any additional profits of the violator ... or (B) statutory damages." 17 U.S.C. § 1203(c)(1). Plaintiff has elected to receive statutory damages. A party electing to receive statutory damages for a violation of 17 U.S.C. § 1202 is to recover "for each violation" a "sum of

9

not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B). Plaintiff seeks $5,000 in statutory damages. See Freeman Decl. ¶ 15.

"In awarding statutory damages under the DMCA, courts consider several factors, namely, the difficulty of proving actual damages, the circumstances of the violation, whether defendants violated the DMCA intentionally or innocently, and deterrence." Myeress v. Elite Travel Grp. USA, 2018 WL 5961424, at *4 (S.D.N.Y. Nov. 14, 2018) (punctuation omitted).

Here, Plaintiff has not shown how he was impeded in providing evidence of actual damages. We have been provided little evidence of the circumstances of the violation except that it appears it was confined to a single infringement. No evidence has been supplied of any direct harm to Plaintiff. As for Defendant's state of mind, Defendant's default has resulted in its admitting the allegation that it acted intentionally, see Compl. ¶ 33. See Olusola II, 2021 WL 631031, at *4 ("Plaintiff alleges, and Defendant admits by defaulting, that Defendant acted 'intentionally and knowingly' in removing Plaintiff's CMI from the Photograph ..."). In these circumstances, an award of $5,000 in statutory damages for Defendant's violation of the DMCA is in line with awards made by other courts in similar circumstances, and thus appropriate in the instant matter. See id. at *6 ("The Court finds that statutory damages in the amount of $5,000 are appropriate for Defendant's DMCA violation as Plaintiff established that Defendant willfully removed CMI, but provided no evidence of direct harm suffered as a result."); Dermansky v. Tel. Media, LLC, 2020 WL 1233943, at *6 (E.D.N.Y. Mar. 13, 2020) ($5,000 in statutory damages awarded where there was a finding of willfulness, "there was only one act of infringement, Plaintiff took no action to cure the violation, such as by sending a cease-and-desist letter or application for injunctive relief, and Plaintiff ha[d] submitted no evidence of actual harm in support of her application"); Mango, 356 F. Supp. 3d at 378 ($5,000 for a single violation of 17

10

U.S.C. § 1202(b)(3)); <u>Myeress</u>, 2018 WL 5961424, at *4 ($5,000 awarded where plaintiff's "allegations ... suggest that Defendant acted willfully"). Accordingly, the Court respectfully recommends that Plaintiff be awarded $5,000 in

    C.    <u>Attorneys' Fees and Costs</u>

Under both the Copyright Act and the DMCA, a court may "in its discretion" award costs to any party (other than the United States), and a reasonable attorney's fee to a prevailing party in a copyright action. 17 U.S.C. §§ 505, 1203(b). In determining whether to award attorney's fees, "district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively reasonable; and (4) compensation and deterrence." <u>Bryant v. Media Right Prods., Inc.</u>, 603 F.3d 135, 144 (2d Cir. 2010) (internal citations omitted). "The third factor—objective reasonableness—should be given substantial weight." <u>Id.</u> Here, the Court finds that an award of attorney's fees is warranted given Defendant's willful conduct and default judgment.

The Court therefore turns to the reasonableness of the fee. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983); <u>see</u> <u>Millea v. Metro North R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011). In support of his application, Plaintiff's counsel submitted a statement of fees showing the date on which the services were performed, the amount of time expended, and a description of the services completed. <u>See</u> Freeman Decl. ¶ 17. This is sufficient to substantiate Plaintiff's request for attorney's fees. <u>See</u> <u>Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers</u>, 34 F.3d 1148, 1160-61 (2d Cir. 1994). Those records reflect that counsel worked for 1.9 hours single on this

11

matter. The Court finds this reasonable and thus considers whether the requested rate of $350 per hour is reasonable.

In determining what "reasonable fee" is, courts consider "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 184 (2d Cir. 2008). The Second Circuit has instructed courts to consider factors like "the complexity and difficulty of the case," "the resources required to prosecute the case effectively," "the timing demands of the case," and "whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself." Id. The rate must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).

In copyright cases, courts in this district have approved rates between $350 and $500. See Romanowicz v. Alister & Paine, Inc., No. 17-cv-8937, 2018 WL 4762980, at *7 (S.D.N.Y. Aug. 3, 2018) (collecting cases), report and recommendation adopted, 2018 WL 4759768 (S.D.N.Y. Oct. 1, 2018). In his Declaration to the Court, counsel for Plaintiff, James H. Freeman, contends that he is "graduated from Benjamin N. Cardozo School of Law in 2000" and has "been admitted to practice for almost twenty years. Freeman Decl. ¶ 17. He states that he has "substantial experience in litigating copyright enforcement actions, having appeared in more than 350 federal lawsuits involving copyright disputes." Id. As counsel's requested $350 rate is squarely in line with approved rates in this district and in light of Mr. Freeman's experience, the $350 per hour is a reasonable fee.

The Second Circuit has squarely held that "any attorney ... who applies for court-ordered compensation in this Circuit ... must document the application with contemporaneous time records ... specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); accord Scott v. City of New York, 643 F.3d 56, 58 (2d Cir. 2011) ("Carey sets out unequivocally that absent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications."). Fee applications that do not contain such supporting data "should normally be disallowed." Marion S. Mishkin L. Off. v. Lopalo, 767 F.3d 144, 148 (2d Cir. 2014). While it is permissible to provide a summary of time records (such as may appear on an invoice) in lieu of actual records, a person with knowledge must still provide the court with competent evidence that the summary is in fact based on time records that were contemporaneously made by each attorney seeking fees. See, e.g., Cruz v. Local Union No. 3 of Int'l Brotherhood of Elec. Workers, 34 F.3d 1148, 1160-61 (2d Cir. 1994); Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co., Inc., 291 F. Supp. 3d 554, 562-63 (S.D.N.Y. 2018), adopted by, 2019 WL 416327 (S.D.N.Y. Feb. 1, 2019). Here, Plaintiff failed to submit any competent evidence to support a finding that the "Statement of Fees" is based on contemporaneously-made time records. Accordingly, the Court recommends that no attorneys' fees be awarded.

As noted above, the Copyright Act permits an award of costs to the prevailing party. 17 U.S.C. § 505. The Court also has discretion to award costs under the DMCA. Id. § 1203(b)(4). Plaintiff requests $440 in costs, consisting of $400 for a court filing fee and $40 for a service fee. See Freeman Decl. ¶ 17, Statement of Fees. While the Court would be prepared to award reasonable costs, Plaintiff fails to submit any documentation supporting such costs. Courts have

"repeatedly ... refused to award costs absent supporting documentation." Exler v. Travel Expl., Inc., 2020 WL 8642113, at *2 (S.D.N.Y. Nov. 10, 2020) (punctuation omitted); see McGlynn v. Cools, Inc., 2020 WL 6561658, at *12 (S.D.N.Y. July 1, 2020) (finding "a $40 service of process fee" should not be awarded where "Plaintiff [had] submitted no back-up support for any requested costs"), adopted by, 2020 WL 5525745 (S.D.N.Y. Sept. 15, 2020). The Court is prepared to take judicial notice, however, that Plaintiff paid a $400 filing fee given that the payment has been entered by the Clerk on the docket sheet. See Ward, 2020 WL 6136293, at *9 ("because Plaintiff declined to provide any evidence of costs, the Court may take judicial notice of the $400 filing fee, as reflected on the docket, but should deny any additional costs") (punctuation omitted). Accordingly, this Court respectfully recommends that Plaintiff be awarded the $400 filing fee in costs.

## CONCLUSION

For the foregoing reasons the Court respectfully recommends that Plaintiff's motion for a default judgment be granted and that a judgment awarding damages in the amount of $6,900 be entered against Defendant.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to Plaintiff's counsel via ECF. Furthermore, the Court directs Plaintiff's counsel (1) to serve a copy of this Report and Recommendation by first class mail to Defendant, and (2) to file proof of service on ECF within two days. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the

expiration of the fourteen (14) day period for filing objections. **Failure to file objections within (14) days will preclude further review of this report and recommendation either by the District Court of Court of Appeals.** Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive the right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

Central Islip, New York
February 7, 2022

/s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge